| | | |
|---|---|---|
| **STATE OF MINNESOTA**<br>**County of Hennepin** | Judicial District:<br>Case Type: | **DISTRICT COURT**<br>Fourth/ Hennepin<br>Civil Other/Misc. |

Eric Tronson, Individually and on behalf of
all others similarly situated,
*Plaintiffs*

vs.

Navient Corporation, Navient Solutions, Inc.
SLM Corporation d/b/a Sallie Mae
*Defendants*

# SUMMONS

    1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

    2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this Summons **a written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

    619 South Tenth Street
    Suite 301
    Minneapolis, MN 55404

    3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

    4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff

1

everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

     5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

     6. **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: February 6, 2018        Respectfully Submitted,

                                  MADGETT LAW, LLC

                                  s/ David J.S. Madgett
                                  David J.S. Madgett (#0390494)
                                  619 South Tenth Street
                                  Suite 301
                                  Minneapolis, MN 55404
                                  (612) 470-6529
                                  dmadgett@madgettlaw.com

                                  ATTORNEY FOR PLAINTIFFS

| | | |
|---|---|---|
| **STATE OF MINNESOTA**<br>**County of Hennepin** | Judicial District:<br>Case Type: | **DISTRICT COURT**<br>Fourth/ Hennepin<br>Civil Other/Misc. |

| | |
|---|---|
| Eric Tronson, Individually and on behalf of all others similarly situated,<br>*Plaintiffs*<br><br>vs.<br><br>Navient Corporation, Navient Solutions, Inc., SLM Corporation d/b/a Sallie Mae<br>*Defendants* | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

PLAINTIFF, on behalf of himself and all other individuals similarly situated, as and for his causes of action against the above-named defendants, states and alleges as follows:

### INTRODUCTION

1. The following case addresses a civil conspiracy to originate, service, and collect predatory student loans. Mr. Tronson and the plaintiffs he seeks to represent are former students who were sold Defendants' student loans to attend the for-profit college ITT Technical Institute ("ITT Tech"). For years prior to and after Mr. Tronson's involvement with ITT Tech, Defendant SLM Corporation ("Sallie Mae") employed ITT Tech to sell and originate their student loan products while failing to supervise ITT Tech in any manner. Even after state and federal

1

investigations revealed the possibility of systematic fraud at ITT Tech, Defendant Sallie Mae did nothing to supervise ITT Tech in the sale of their student loan products.

2. Quite predictably, ITT Tech student loan borrowers had substantial trouble repaying their loans upon graduation. Defendants thereafter engaged in a campaign of collection harassment whereby defendants, Navient Corporation and Navient Solutions, Inc. ("Navient") together with Sallie Mae charged borrowers fees and penalties while failing to disclose federally allowed, reduced cost repayment options. Upon the default of loans taken out by students later unable to repay Sallie Mae, Defendants simply turned the nonperforming loans over to the Department of Education, thereby recovering their investment from the American taxpayer.

## STATEMENT OF JURISDICTION & VENUE

3. This Court has Jurisdiction over the subject matter of this action pursuant to Minn. Stat. §484.01 and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 (b) (3).

4. Venue is proper pursuant to Minn. Stat. §542.09 because the cause of action arose within the State of Minnesota and the County of Hennepin.

## PARTIES

5. Lead plaintiff Eric Tronson is an adult resident of Hennepin County, Minnesota.

6. The Navient defendants are both foreign companies registered to conduct business in the state of Minnesota.

7. Defendant Sallie Mae is not registered to conduct business in Minnesota.

8. Plaintiffs are informed and believes, and thereon alleges, that at all times relevant, all Defendants conducted business in the State of Minnesota and in the County of Hennepin.

## PREREQUISITES TO BRINGING A CLASS ACTION

*Identification of the First Proposed Class*

9. Lead plaintiff Eric Tronson seeks to represent a class consisting of former ITT Tech students whose fraudulent loans were transferred from Sallie Mae to Navient Solutions, Inc.: This class is easily identified, but is believed to be so numerous that joinder of all members is impracticable.

10. Lead plaintiff Eric Tronson seeks to represent the all such individuals for the period of six years prior to the date this action was commenced through the date this action is resolved.

11. The violations alleged are specific to the class in that only students whose loans were transferred are victims of the conspiracy between the parties.

12. Mr. Tronson is qualified to represent the class as he decided to take out the loans only after being told of a guaranteed job by Defendants' agents at ITT Tech and as in 2014 t Sallie Mae transferred the servicing of his loans to Navient.

13. Mr. Tronson's claim is representative of those of the class: Mr. Tronson's claim involves an express statement by Defendants' agents at ITT Tech that Plaintiff would be able to pay his loan with the increased wages from his guaranteed high-paid job. He was later unable to find the high-paid job he was promised, and Defendants' not only commenced collection efforts, but also failed to provide Mr. Tronson with disclosures about repayment plans that could assist him; therefore, Mr. Tronson's claims mirror those of the proposed class.

*Identification of the Second Proposed Class*

14. Lead plaintiff Eric Tronson seeks to represent a second class of individuals consisting of former ITT Tech students whose fraudulent loans were serviced by Navient Solutions, Inc. and

3

who Navient called via an automatic telephone dialing system ("ATDS") after Plaintiff made express requests that Defendant cease such calls: This class is easily identified but is believed to be so numerous that joinder of all members is impracticable.

15. Lead plaintiff Eric Tronson seeks to represent this class of individuals for the period of six years prior to the date this action was commenced through the date this action is resolved.

16. The violations alleged are specific to the class in that only students whose loans were serviced by Navient Solutions, Inc. are victims of the collection practices alleged.

17. Mr. Tronson is qualified to represent the class as his ITT Tech loans are serviced by Navient Solutions, Inc., and the company conducted a campaign of telephone harassment against Mr. Tronson.

18. Mr. Tronson's claim is representative of those of the class: Mr. Tronson's claim involves repeated telephone calls after Mr. Tronson asked Navient to stop such calls; therefore, Mr. Tronson's claims mirror any of those complained of by the proposed class.

*Identification of the Third Proposed Class*

19. Lead plaintiff Eric Tronson seeks to represent a third class of individuals consisting of former ITT Tech students whose fraudulent loans were serviced by Navient Solutions, Inc. and who were denied required disclosures: This class is easily identified, but is believed to be so numerous that joinder of all members is impracticable.

20. Lead plaintiff Eric Tronson seeks to represent this class of individuals for the period of six years prior to the date this action was commenced through the date this action is resolved.

21. The violations alleged are specific to the class in that only students whose loans were serviced by Navient Solutions, Inc. are victims of the conspiracy between the parties to withhold valuable information from the Plaintiffs.

4

a failure of Navient to provide required disclosures and misinformation regarding programs available to assist Mr. Tronson.; therefore, Mr. Tronson's claims mirror any of those complained of by the proposed class.

## FACTS

### FACTS COMMON TO ALL PLAINTIFFS

24. Sometime during or prior to 2004, various enforcement agencies began investigations into questionable business practices at ITT Tech.

25. Investigations into high-pressure recruiting tactics, falsified paperwork, and high rates of student defaults were all commenced prior to the end of 2004.

26. ITT Tech was a for-profit college that was ultimately forced to close by regulators in 2016.

27. The vast majority of the ITT Tech students required some form of financial aid to purchase education services from the company.

28. On information and belief, all prior to 2004, agents of ITT Tech began selling and originating student loans for Defendant Sallie Mae.

29. ITT Tech directly benefited from the sales of the student loans by obtaining the loan proceeds.

30. Despite the obvious conflict of interest with an originator also obtaining all of the loan proceeds, agents of Sallie Mae made no effort to supervise ITT Tech in the sale or origination of student loans.

31. After learning of various investigations into ITT Tech, Sallie Mae still made no effort to supervise the sale or origination of their student loan products at ITT Tech.

32. While an underwriter typically has some incentive to assure loans have a possibility of repayment, namely the fear of default, Sallie Mae had no financial incentive to assure ITT Tech originated loans were likely to be repaid as the United States Department of Education insured Sallie Mae against default.

33. Over the past decade alone, ITT Tech took in over $11 billion in gross tuition revenue.

34. It is estimated that about 75 percent of ITT Tech's revenue came from federal student aid, with the vast majority on that debt being underwritten my Sallie Mae.

35. Following a series of state and Federal investigations, effective August 2016, the US Department of Education disallowed students from using federally guaranteed student loans to attend any ITT Tech program.

36. As of September 6, 2016, all ITT Tech campuses were closed nationwide.

37. On September 16, 2016, ITT Tech filed for bankruptcy.

38. Given the widespread fraud and abuse connected with ITT Tech, individuals who have student loans from their attendance at ITT Tech are able to apply to have their debt forgiven by the US Department of Education.

39. Although students may apply through the Department of Education program, former students must meet stringent qualification criteria not available for most former students.

51. Navient Solutions, Inc. is wholly owned and controlled by Navient Corporation, another Company established by Sallie Mae.

52. Navient Solutions, Inc. was set up with the express purpose of servicing student loans.

53. On information and belief, the ITT loans transferred from Sallie Mae to Navient Solutions, Inc. contained documents known to be fraudulent at the time of transfer by all Defendants.

54. Navient Corporation facilitated the agreement to transfer the ITT student loans from Sallie Mae to Navient Solutions, Inc.

55. Navient and Sallie Mae conspired to transfer fraudulent loans and to thereafter profit from the collection of these illegal loans.

## FACTS RELATING TO THE SECOND PROPOSED CLASS

56. Plaintiffs' loans are or were within the last six years serviced by Navient Solutions, Inc.

57. At no time prior to the transfer of Plaintiff's loans did any class member have a preexisting business relationship with Navient Solutions, Inc.

58. Plaintiffs are, and at all times mentioned herein were, "persons" as defined by 47 U.S.C. § 153 (39) and "subscribers" as defined by Minn. Stat. §325E.26 subd. 5.

59. Defendants are, and at all times mentioned herein were, "person[s]" as defined by 47 U.S.C. § 153 (39) and "caller[s]" as defined by Minn. Stat. §325E.26 subd. 3.

60. Plaintiffs were called on phones connected with a "cellular telephone service" as that term is used in 47 U.S.C. § 227 (b)(1)(A)(ii).

61. On at least one occasion Plaintiffs each asked Defendant to cease calling their personal cell phones.

8

40. On Jan. 3, 2017, the Project on Predatory Student Lending of the Legal Services Center of Harvard Law School filed a $7.3 billion class action lawsuit in the bankruptcy proceedings of ITT Tech.

41. The suit alleges that students of ITT Tech experienced extensive, widespread, and systematic deceit.

42. The substance of the Harvard suit focuses on egregious misdoings of ITT Tech; however, the suit limits student recovery to the ITT bankruptcy estate.

43. By contrast, Plaintiffs in this matter seek to recover from the lenders also complicit in the perpetrated frauds.

## FACTS RELATING TO THE FIRST PROPOSED CLASS

44. The loans Plaintiffs took out were originated by ITT Tech and underwritten by Sallie Mae.

45. ITT Tech acted as Sallie Mae's agent while selling and originating the loans in question.

46. At the time of loan sale, some Plaintiffs were told that the loans in question were guaranteed to be repaid through Plaintiffs' guaranteed wage increases.

47. Other Plaintiffs were told that they were guaranteed jobs with high rates of pay.

48. Other Plaintiffs were told that in the event that increased wages were not obtained, there were forgiveness options for which they could take advantage.

49. In all cases Plaintiffs were told that by taking the loans in question, they were guaranteed to be in the same or better position than as if they did not take out the loans in question.

50. In 2014, Plaintiffs' loans were transferred from Sallie Mae to a new corporation set up by Sallie Mae, Navient Solutions, Inc.

62. Despite the request of Plaintiffs, Defendants Navient Solutions, Inc. continued calling Plaintiffs' cellular telephone with a computer generated or prerecorded voice.

63. Despite the requests of Plaintiffs, Defendant continued to call Plaintiffs' cellular telephones with automatic telephone dialing equipment.

## FACTS RELATING TO THE THIRD PROPOSED CLASS

64. Because of the federal guarantee system, Navient Corporation and Navient Solutions, Inc. have an incentive to generate fees without regard to whether any particular loan will ever be repaid.

65. On information and belief Navient Corporation and Navient Solutions, Inc. conspired to deny Plaintiffs required information that would have benefited Plaintiffs in establishing realistic repayment plans and/ or applying for time sensitive loan forgiveness programs.

## FACTS SPECIFIC TO MR. TRONSON'S CLAIMS

66. Sometime during the 2006-2009 time period, Plaintiff appears to have applied for and obtained approximately $30,000.00 in student loans to attend the for-profit school ITT Technical Institute.

67. After graduation, Plaintiff was quite predictably unable to repay his alleged student loan debt.

68. Although Plaintiff wished to pay the debt(s) in question, Plaintiff was forced to begin making interest-only payments within months of graduation.

69. Sometime thereafter, Plaintiff's student loan debt(s) were sold, assigned, or otherwise placed with Defendants for the purposes of collection.

70. Defendants thereafter began calling Plaintiff on nearly a daily basis.

71. On some days Plaintiff received in excess of five calls from Defendants.

72. On numerous occasions Defendants' representatives initiated the conversation by demanding personal information from Plaintiff while refusing any information about who they were or why they were calling.

73. The representatives instead repeated they were calling regarding an urgent matter.

74. The urgency with which the representative spoke led Plaintiff to believe a true emergency existed.

75. On numerous occasions Plaintiff explained that his financial situation, lack of employment, and/ or low wages made it impossible for him to meet his loan obligation.

76. On several occasions Plaintiff apologized for being unable to pay the debt in question.

77. Plaintiff requested the calls in question stop because Plaintiff had no means of repaying his alleged debt.

78. The calls did not stop.

79. In fact, on several occasions when Plaintiff asked for the calls to stop, Defendants would call Plaintiff a subsequent time immediately after the call was terminated.

80. The calls in question appeared to originate from at least five separate lines and, in many cases, appeared as blocked or unknown calls.

81. Upon information and belief, Defendants utilize an automatic telephone dialing system (hereinafter "ATDS") to collect alleged debts from consumers.

82. On several occasions Defendants' auto-dialing system would dial Plaintiff; when Plaintiff answered these phone calls, a representative was entirely unavailable, resulting in a period of dead air (hereinafter "dead air calls").

83. On other occasions when Plaintiff answered these calls a pre-recorded message came on the line.

10

84. Plaintiff is informed and believes, and thereon alleges, that said phone calls were made to Plaintiff's cellular telephone via an "automatic telephone dialing system" as defined by 47 U.S.C. § 227 (a)(1).

85. Plaintiff is informed and believes, and thereon alleges, that these telephone calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

86. Defendants placed or caused to be placed these telephone calls in violation of 47 U.S.C. § 227(b)(1).

87. Plaintiff is informed and believes, and thereon alleges, that during these telephone calls Defendants used an "automatic dialing-announcing device" as defined by Minn. Stat. §325.26 subd. 2.

88. Plaintiff is informed and believes, and thereon alleges, that Plaintiff did not request, consent to, permit, or authorize receipt of said messages pursuant to Minn. Stat. §325E.27(a).

89. Defendants placed or caused to be placed these telephone calls in violation of Minn. Stat. §325E.27.

90. On multiple occasions, Plaintiff requested that Defendants stop calling, yet the calls in question continued.

91. By failing to stop calling after being requested to do so, Defendants violated 15 U.S.C. § 1692d.

92. By placing harassing dead air calls to Plaintiff's cell phone, Defendants violated 15 U 692d

93. On one occasion, Plaintiff informed Defendants' representatives he did not believe the debt balance was correct and further informed Defendants that he was unable to pay the debt in question.

94. In response, Defendants' representatives informed Mr. Tronson that the debt would be reported to consumer reporting agencies as due and owing.

95. Upon information and belief, Defendants never furnished information regarding Plaintiff to any consumer reporting agency.

96. As a result of Defendants' conduct, Plaintiff suffered from anger, frustration, anxiety, and humiliation.

## SPECIFIC CLAIMS

### CLAIMS FOR CLASS I

### Count I

### Civil Conspiracy

### Against all Defendants

97. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

98. Sometime in 2014, Defendants as co-conspirators reached an agreement to transfer loans from Sallie Mae to Navient Solutions, Inc., a new company, with full knowledge many if not all of the loans were fraudulent and/or sold and originated by an organization commonly known to be engaged in fraud.

99. Defendants thereafter colluded to maximize loan profits without regard to the costs to the students or the American taxpayers.

100. As a proximate result of this conspiracy, Plaintiffs have been damaged, as is more fully alleged above.

## CLAIMS FOR CLASS II

### Count II

### Negligent Violations of the Telephone Consumer Protection Act 47 U.S.C. § 227 Et Seq.

### Against Navient Solutions, Inc.

101. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

102. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

103. As a result of Defendant's negligent violations of 47 U.S.C. § 227 et seq, Plaintiffs are entitled to an award of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

104. Plaintiffs are also entitled to seek injunctive relief prohibiting such conduct in the future.

### Count III

### Knowing and/ or Willful Violations of the Telephone Consumer Protection Act

### 47 U.S.C. § 227 Et Seq.

### Against Navient Solutions, Inc.

105. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

106. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/ or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

107. As a result of Defendant's knowing and/ or willful violations of 47 U.S.C. § 227 et seq., Plaintiffs are entitled to treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

### Count IV

### Violation of the Minnesota Automatic Dialing-Announcing Devices Act

### Minn. Stat. §325E.26-31

### Against Navient Solutions, Inc.

108. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

109. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the Minn. Stat. §325E.27.

110. Pursuant to Minn. Stat. §325E.31, Defendants are subject to a private right of action under Minn. Stat. §8.31, and are subject to remedies including damages, reasonable costs and disbursements, reasonable attorney's fees, and injunctive relief.

### CLAIMS FOR CLASS III

### Count V

### Civil Conspiracy

### Against Navient Corporation and Navient Solutions, Inc.

111. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

112. Defendants as co-conspirators reached an agreement to withhold information from ITT Tech students regarding loan repayment options and loan forgiveness programs.

113. Defendants colluded to maximize profits without regard to the law requiring servicers to provide disclosures and without regard to the costs to American taxpayers.

114. As a proximate result of this conspiracy, Plaintiffs have been damaged, as is more fully alleged above.

## JURY DEMAND

115. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, lead plaintiff Eric Tronson, on behalf of himself and all others similarly situated, by and through his attorneys, respectfully prays for Judgment to be entered in favor of Plaintiffs and against Defendants as follows:

    a. All actual compensatory damages suffered;

    b. Statutory damages of $500.00 per violation, pursuant to 47 U.S.C. §227(b)(3)(B);

    c. Statutory damages of $1,500.00 per violation, pursuant to 47 U.S.C. §227(b)(3)(C);

    e. Injunctive relief prohibiting such conduct in the future;

    f. Reasonable attorney's fees, litigation expenses, and cost of suit; and

      g.      Any other relief deemed appropriate by this Honorable Court.

Dated: February 6, 2018         Respectfully Submitted,

MADGETT LAW, LLC

s/ David J.S. Madgett
David J.S. Madgett (#0390494)
619 South Tenth Street
Suite 301
Minneapolis, MN 55404
(612) 470-6529
dmadgett@madgettlaw.com

ATTORNEY FOR PLAINTIFFS

## Acknowledgement

Plaintiffs acknowledge that, pursuant to Minn. Stat. Sec. 549.21 sub. 2, the Court in its discretion may award costs, disbursements, reasonable attorney's fees and witness fees to the parties against whom costs, disbursements, reasonable attorney's fees and witness fees were charged in bad faith.

Dated: February 6, 2018         By: /s/ David J.S. Madgett
David J.S. Madgett
ATTORNEY FOR PLAINTIFFS